UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

**RAY DOUGLAS GRIFFITH,**

   Appellant,

v.                                                       No. 4:21-cv-0825-P

**LONE STAR FLCA ET AL.,**

   Appellees.

### MEMORANDUM OPINION & ORDER

Ray Douglas Griffith appeals the bankruptcy court's finding that his P.O. Box constituted his "last known address" and the finding that he waived the Deed of Trust's contractual provision requiring that any change of address be designated in writing. Because the bankruptcy court did not clearly err, the Court affirms.

### BACKGROUND

#### A. The Family Ranch

Approximately 20 years ago, Mr. Griffith purchased two tracts of land in Cisco, Texas: a 97-acre tract in 2003, and an adjacent 100-acre tract in 2005. Together, these two properties functioned as Mr. Griffith's family ranch until January 2020, when they were sold in the foreclosure proceedings that prompted this litigation.

#### B. The Promissory Note and Deed of Trust

Mr. Griffith financed the purchase of each tract of land with a loan.[1] For the 100-acre tract of land, Mr. Griffith obtained a loan from Lone Star and executed a Promissory Note—agreeing to repay the loan, plus applicable interest. He also executed a Deed of Trust granting Lone Star a lien on both tracts.

Under the terms of the Promissory Note and the Deed of Trust, Mr. Griffith "[would] be in default" if he "fail[ed] to make payment when

---

[1] The loan used to finance the purchase of the 97-acre tract of land is not at issue.

due." In the event of a default, the Deed of Trust empowered Lone Star to accelerate the debt and foreclose on both tracts, in accordance with the procedures articulated in the Deed of Trust.

Two provisions in the Deed of Trust are relevant to this appeal. *First*, Paragraph 16 of the Deed of Trust requires Lone Star to "give notice of sale . . . as required by the applicable law in effect at the time of the proposed sale." *Second*, Paragraph 27 of the Deed of Trust requires Lone Star to send "any notice" to either 5112 Geddes Avenue, Fort Worth, Texas 76107 ("Geddes Address") or to "any other address designated in writing," unless "otherwise required by law."

### C. Mr. Griffith's Notice Address and Note Delinquencies

At the time he signed the Promissory Note and Deed of Trust, Mr. Griffith was living at the Geddes Address. In 2007, however, he moved from the Geddes Address to 2916 Sanguinet, Fort Worth, Texas 76107 ("Sanguinet Address"). Following this move, Mr. Griffith changed his notice address with Lone Star from the Geddes Address to the Sanguinet Address. Lone Star then began mailing correspondence, monthly statements, and other notices to the Sanguinet Address.

Sometime prior to April 6, 2016, Mr. Griffith began to fall behind on his Promissory Note obligations. To help cure this delinquency, he signed up for online banking in Lone Star's loan accounting system. Despite creating an online account, Mr. Griffith specifically stipulated that he wanted to continue to receive his monthly invoices by mail.

Over the next years, Mr. Griffith made sporadic and untimely payments on his Promissory Note, with his last payment being made in December 2018. As a result, Lone Star began sending "Notice of Default and Notice of Acceleration" letters to the Sanguinet Address. Lone Star also mailed a "Notice of Acceleration and Intent to Foreclose" to the Sanguinet Address and left several voicemails on Mr. Griffith's phone.

Mr. Griffith then sent a series of text messages, confirming that he had received the voicemails. Mr. Griffith also wrote, "I am not getting mail [at the Sanguinet Address] I am at [the Geddes Address]." Because the text messages were confusing, Lone Star scheduled a phone call. During the phone call, Mr. Griffith requested that his notice address be

changed from the Sanguinet Address to P.O. Box 101509, Fort Worth, Texas, 76185 ("P.O. Box"). At no point after this verbal change of address did Mr. Griffith ever attempt to change his address again. Thus, in accordance with the last change of address request, Lone Star began sending all mail (e.g., monthly statements and multiple "Notice of Substitute Trustee's Sale") to the P.O. Box.

### D. Foreclosure Sale and Procedural Background

On November 4, 2019, Mr. Griffith filed a bankruptcy petition. However, he failed to file several required documents with his petition. The bankruptcy court accordingly dismissed his case on December 4, 2019. With the bankruptcy case dismissed and not yet reinstated, Lone Star sent a "Notice of Substitute Trustee's Sale" to the P.O. Box.

Per the "Notice of Substitute Trustee's Sale," Lone Star conducted a foreclosure sale on January 7, 2020 and sold Mr. Griffith's family ranch. The next day, Mr. Griffith filed the required documents missing from his original bankruptcy petition. The bankruptcy court then reinstated the original bankruptcy case. On January 29, 2020, however, Lone Star sent a letter to Mr. Griffith's P.O. Box, enclosing a release of lien and confirming that the Promissory Note had been paid in full.

On May 18, 2020, Mr. Griffith filed a complaint, commencing the underlying adversary proceeding. And on January 13, 2021, the bankruptcy court dismissed all of Mr. Griffith's claims except for a breach of contract claim. On March 17, 2021, however, the bankruptcy court reconsidered and amended its previous dismissal order to reinstate Mr. Griffith's wrongful-foreclosure claim. The bankruptcy court then held a trial on Mr. Griffith's claims for breach of contract and wrongful foreclosure. Following the trial, the bankruptcy court dismissed both claims. This appeal followed.

## JURISDICTION

In an appeal of a bankruptcy court's resolution of bankruptcy-related claims, this Court exercises jurisdiction pursuant to 28 U.S.C. § 158(a).

## STANDARD OF REVIEW

When a district court reviews a bankruptcy court's decision, it functions as an appellate court and utilizes the same standard of review

generally applied by a federal court of appeals. *In re Webb*, 954 F.2d 1102, 1104 (5th Cir. 1992). Conclusions of law are reviewed *de novo*. *In re Young*, 995 F.2d 547, 548 (5th Cir. 1993). And findings of fact are reviewed for clear error. *In re Allison*, 960 F.2d 481, 483 (5th Cir. 1992). These findings are reversed only if, based on the entire body of evidence, the court is left "with the definite and firm conviction that a mistake has been made." *Beaulieu v. Ragos*, 700 F.3d 220, 222 (5th Cir. 2012).

## ANALYSIS

Mr. Griffith raises two issues on appeal. He challenges the bankruptcy court's finding that his P.O. Box constituted his "last known address" and the finding that he waived the contractual provision in the Deed of Trust requiring both parties to designate, in writing, any change of address. As explained, the Court affirms the bankruptcy court.

### A. The bankruptcy court did not clearly err in finding that Mr. Griffith's P.O. Box constituted his "last known address."

Under the Deed of Trust, Lone Star was required to "give notice of sale . . . as required by the applicable law in effect at the time of the proposed sale." The "applicable law" is Chapter 51 of the Texas Property Code—which, in relevant part, requires the lender to send the notice of the foreclosure sale "to the debtor at the debtor's last known address." TEX. PROP. CODE § 51.002(e). To that end, a "[d]ebtor's last known address" is the "debtor's last known address as shown by the records of the mortgage servicer." *Id.* § 51.0001(2)(B). To change the last known address, however, a "debtor shall inform the mortgage servicer of the debt in a *reasonable manner* of any change of address of the debtor for purposes of providing notice to the debtor under Section 51.002." *Id.* § 51.0021 (emphasis added).

Here, following a two-day bench trial, the bankruptcy court found that Mr. Griffith "verbally and expressly" directed Lone Star to change his notice address to the P.O. Box. This directive was likewise found to be a valid change of address; thus, Mr. Griffith's P.O. Box constituted his "last known address." The bankruptcy court therefore found that Lone Star complied with "applicable law" by mailing the foreclosure notice to the P.O. Box. Based on the Court's review of the record and applicable law, this finding is entirely plausible.

4

Mr. Griffith counters with two responses; neither have merit. He first contends that under *Bauder v. Alegria*, 480 S.W.3d 92 (Tex. App.—Houston [14th Dist.] 2015, no pet.), whenever a debtor provides a written instruction, that written instruction overrides any competing information in the servicer's records at the time a foreclosure notice is sent. In the alternative, he contends that a certified Notice of Bankruptcy ("Bankruptcy Note") related to his bankruptcy petition established his "last known address."

Under Mr. Griffith's first theory, the text messages sent on April 23, 2019,[2] which allegedly gave Lone Star clear written instruction that all notices should be mailed to the Geddes Address, override the subsequent phone call where he "verbally and expressly" directed Lone Star to change his notice address to his P.O. Box. Thus, Mr. Griffith argues, the text messages establish the Geddes Address as his "last known address."

Mr. Griffith's reliance on *Bauder*—more specifically, on a footnote in *Bauder*—is misplaced. Instead of supporting Mr. Griffith's theory, *Bauder* merely states:

> Under [§ 51.0001(2)(B),] if [the debtor] had provided [the lender] a written change of address before the notices were sent, then the notices should have been sent to the address provided in writing, even if it differed from [the debtor's] last known address as shown by [the lender's] records. . . . But, [the debtor] did not provide [the lender] with a written change of address before the notices were sent.

*Bauder*, 480 S.W.3d at 97 n.7. This footnote supports the proposition that a debtor's written instruction overrides any competing information in the mortgage service's record *at the time* the written instruction was made. It does not, however, support the proposition that a written instruction also overrides a *subsequent* change of address.

---

[2]Underlying Mr. Griffith's argument is the assumption that the text messages were found to be a valid change-of-address request. The bankruptcy court's findings, however, offer no such support. And were this Court to exercise its "discretion to affirm on any ground supported by the record," *Rutila v. Dep't of Transp.*, 12 F.4th 509, 511 n.3 (5th Cir. 2021), the Court would conclude that the text messages were not a qualifying change-of-address request because the messages did not provide reasonable notice that he wished to change his notice address. However, because the bankruptcy court did not clearly err, the Court need not pursue such an avenue.

5

Here, the bankruptcy court found that Mr. Griffith "verbally and expressly" directed Lone Star to change his notice address to the P.O. Box. Importantly, this change of address occurred *after* the text messages. Thus, even if the text messages had reasonably instructed Lone Star to mail foreclosure notices to the Geddes Address, that designation would have controlled only until Mr. Griffith's verbal and express directive changed his notice address to the P.O. Box. And because Mr. Griffith did not provide Lone Star with a change of address after the phone call, the P.O. Box remained his "last known address." Despite Mr. Griffith's argument, nothing in *Bauder* requires this Court to ignore the fact that he "verbally and expressly" directed Lone Star to change his notice address to his P.O. Box because of a *prior* written change of address.

Mr. Griffith next contends that, even without the text messages, the Bankruptcy Notice related to his bankruptcy petition established the Geddes Address as his "last known address." After hearing all the testimony and carefully considering the evidence, the bankruptcy court rejected this argument. Specifically, the bankruptcy court found that the Bankruptcy Notice could not reasonably be construed to be a notice of address change as contemplated by the Texas Property Code and the Deed of Trust. And, even if it could somehow be construed as a technical change-of-address form, the bankruptcy court found that Mr. Griffith did not inform Lone Star of this change "in a reasonable manner." There is no clear error on this point.

While Mr. Griffith may disagree with the bankruptcy court's conclusion, he cannot dispute that the bankruptcy court's findings pertaining to his "last known address" are "reasonable and supported by the evidence." The Court therefore concludes that the bankruptcy court did not clearly err in finding that Mr. Griffith's P.O. Box constituted his "last known address."

**B. The bankruptcy court did not clearly err in finding that Mr. Griffith waived the contractual requirement that both parties designate, in writing, any change of address.**

Pursuant to Paragraph 27 of the Deed of Trust, Lone Star was required to send "notice" to either the Geddes Address or to "any other

6

address designated in writing," unless "otherwise required by law." The bankruptcy court found, however, that Mr. Griffith waived this contractual provision.

Under Texas law, waiver is the "intentional relinquishment of a known right or intentional conduct inconsistent with claiming that right." *Tenneco Inv. v. Enter. Prods. Co.*, 925 S.W.2d 640, 643 (Tex. 1996). As such, waiver requires intent. Specific to implied waiver, "intent must be clearly demonstrated by the surrounding facts and circumstances." *Jernigan v. Langley*, 111 S.W.3d 153, 156 (Tex. 2003). "Silence or inaction, for so long a period as to show an intention to yield the known right, is . . . enough to prove waiver." *Tenneco*, 925 S.W.2d at 643.

After hearing all the testimony and carefully considering the evidence, the bankruptcy court found that Mr. Griffith—expressly and impliedly—waived his right to have Lone Star send notice to either the Geddes Address "or to any other address designated in writing." Based on the Court's review of the record and applicable law, this determination is entirely plausible.

Mr. Griffith counters with one response. He contends that because there is insufficient evidence in the record, the bankruptcy court clearly erred in finding that he expressly *and* impliedly waived his contractual right. This contention is without merit.

Here, the bankruptcy court found that Mr. Griffith: (1) "twice made an express change-of-address request to Lone Star verbally over the phone"; (2) "verbally and expressly asked [Lone Star] to send notices to Mr. Griffith's [P.O. Box] rather than to the Geddes Address"; (3) "received the June 2019 Foreclosure Sale Notice at the [P.O. Box] and never raised any concerns to Lone Star that such notices should be sent to the Geddes Address instead"; (4) "received the November 2019 Foreclosure Sale Notice at the [P.O. Box] and never raised any concerns to Lone Star that such notices should be sent to the Geddes Address instead"; and (5) "never raised any concerns to Lone Star that [his monthly bank statements] should be sent to the Geddes Address instead [of his P.O. Box]." Because the record supports these factual findings,

7

the bankruptcy court did not clearly err in finding that Mr. Griffith impliedly waived his contractual right.[3]

To undercut the bankruptcy court's findings, Mr. Griffith specifically argues that there is no evidence in the record that he had "actual knowledge" that Lone Star was posting, sending, and addressing various mailings to his P.O. Box. On this point, however, Mr. Griffith fails to establish that this finding is unsupported by the record. Instead, the record demonstrates that Mr. Griffith was fully aware that Lone Star was sending mail to his P.O. Box.

Mr. Griffith testified that he received various mailings, such as monthly statements, from Lone Star at his P.O. Box both before *and* after the disputed foreclosure sale. And while he denies receiving any of the foreclosure notices sent to his P.O. Box, Mr. Griffith testified that he avoided the June and November foreclosure sales, which had notices sent to his P.O. Box. He did so by appointing a receiver in his divorce proceeding and by filing a Chapter 13 petition under the Bankruptcy Code. And despite receiving mail at the P.O. Box, Mr. Griffith testified that he never informed Lone Star that mail should be sent elsewhere.

Based on the exhibits and credibility of the witnesses, the bankruptcy court found that Mr. Griffith had knowledge that Lone Star was sending mail to the P.O. Box. And based the Court's review of the record, the Court concludes that the bankruptcy court's finding that Mr. Griffith had knowledge that Lone Star was mailing items to the P.O. Box is not clearly erroneous. *See In re Renaissance*, 713 F.3d 285, 293 (5th Cir. 2013) ("Factual findings 'based on determinations regarding the credibility of witnesses' demand 'even greater deference' because 'only the trial judge can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding of and belief in what is said.'" (quoting *Anderson v. Bessemer City, N.C.*, 470 U.S. 564, 575 (1985))).

---

[3]Because the bankruptcy court did not clearly err in finding that Mr. Griffith impliedly waived the contractual provision, which is an independent ground to affirm, the Court need not analyze the bankruptcy court's finding that he expressly waived the same.

Essentially, Mr. Griffith argues that his view of the evidence is correct and that the bankruptcy court's view is incorrect. The clearly erroneous standard, however, does not allow this Court to substitute the bankruptcy court's credibility findings for its own. And because the bankruptcy court's finding that Mr. Griffith waived his contractual right is "reasonable and supported by the evidence," the Court will not overturn the bankruptcy court.

## ORDER

Having **OVERRULED** Mr. Griffith's issues on appeal, the Court **AFFIRMS** the bankruptcy court.

**SO ORDERED** on this **28th day** of **April, 2022.**

_____
Mark T. Pittman
UNITED STATES DISTRICT JUDGE